# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| AMERICAN REFINING GROUP, INC.; CALUMET MONTANA REFINING, LLC; CALUMET SHREVEPORT REFINING, LLC; ERGON REFINING, INC.; ERGON-WEST VIRGINIA, INC.; HUNT REFINING COMPANY; PAR MONTANA, LLC; PLACID REFINING COMPANY LLC; SAN JOAQUIN REFINING CO., INC.; THE SAN ANTONIO REFINERY LLC; U.S. OIL & REFINING COMPANY; AND WYOMING REFINING COMPANY, <br><br>    Petitioners, <br><br>    v. <br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br>    Respondent. | Case No. 25-1125 |

## PETITION FOR REVIEW

Pursuant to Section 307(b) of the Clean Air Act, 42 U.S.C. § 7607(b), and Federal Rule of Appellate Procedure 15(a), American Refining Group, Inc.; Calumet Montana Refining, LLC; Calumet Shreveport Refining, LLC; Ergon Refining, Inc.; Ergon-West Virginia, Inc.; Hunt Refining Company; Par Montana, LLC; Placid Refining Company LLC; San Joaquin Refining Co., Inc.; The San Antonio Refinery LLC; U.S. Oil & Refining Company; and Wyoming Refining Company (together, the

"Small Refineries Coalition") petition this Court for review of the United States Environmental Protection Agency's Final Rule, "Renewable Fuel Standard (RFS) Program: Extension of 2024 Compliance Reporting Deadline ("Final Rule"). The Final Rule was published in the Federal Register on March 14, 2025. 90 Fed. Reg. 12109 (Mar. 14, 2025). This Petition is timely filed within 60 days of Federal Register publication. *See* 42 U.S.C. § 7607(b)(1). A copy of the Final Rule is attached at Exhibit A.

The Corporate Disclosure Statement required by Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1 is attached as Exhibit B.

| | |
|---|---|
| Dated: May 13, 2025 | Respectfully submitted, |
| | *s/ Claudia O'Brien* |
| | Claudia O'Brien |
| | 664 Live Oak Drive |
| | McLean, VA 22101 |
| | Telephone: (703) 220-2513 |
| | claudia.obrien87@gmail.com |
| | |
| | *Attorney for Petitioners* |

# Exhibit A


judicial challenges to the 2021 Rule are resolved.

In addition to the ongoing judicial review of the 2021 Rule, which as described above raises issues relevant to the Final Rule, the United States House of Representatives and the United States Senate have both introduced joint resolutions providing for congressional disapproval of the Final Rule under the Congressional Review Act, 5 U.S.C. chapter 8. See H.J. Res. 60 (referred to the House Committee on Natural Resources on February 21, 2025) and S.J. Res. 30 (placed on the Senate Legislative Calendar on March 4, 2025). These resolutions create additional uncertainty for the parties about whether the Final Rule will become effective or will remain in effect if it does, providing additional support for this decision to further postpone the effective date of the Final Rule.

**Maureen D. Foster,**
*Chief of Staff, Exercising the Delegated Authority of the Assistant Secretary for Fish and Wildlife and Parks.*

[FR Doc. 2025–04129 Filed 3–13–25; 8:45 am]

**BILLING CODE 4312–52–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 80

[EPA–HQ–OAR–2024–0411; FRL–12015.1–02–OAR]

**RIN 2060–AW46**

### Renewable Fuel Standard (RFS) Program: Extension of 2024 Compliance Reporting Deadline

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Final rule.

**SUMMARY:** EPA is extending the Renewable Fuel Standard (RFS) compliance reporting deadline for the 2024 compliance year. EPA is also making several minor amendments and technical corrections to other RFS provisions.

**DATES:**

*Effective date.* This rule is effective on March 13, 2025. The incorporation by reference of certain publications listed in this regulation is approved by the Director of the Federal Register as of March 13, 2025.

*Operational date.* For operational purposes under the Clean Air Act (CAA), this final rule is effective as of March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID No. EPA–HQ–OAR–2024–0411. All documents in the docket are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, e.g., confidential business information (CBI) or other information whose disclosure is restricted by statute. Certain other material is not available on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available electronically through *https://www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** For questions regarding this action, contact Nick Parsons, Office of Transportation and Air Quality, Assessment and Standards Division, Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, MI 48105; telephone number: (734) 214–4479; email address: *RFS-Rulemakings@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

### Dates

Section 553(d) of the Administrative Procedure Act (APA), 5 U.S.C. chapter 5, generally provides that rules may not take effect until 30 days after they are published in the **Federal Register**. EPA is issuing this final rule under section 307(d) of the CAA (or "the Act"), which states, "The provisions of section 553 through 557 . . . of Title 5 shall not, except as expressly provided in this section, apply to actions to which this subsection applies." Thus, section 553(d) of the APA does not apply to this rule. EPA is nevertheless acting consistently with the policies underlying APA section 553(d) in making this final rule operational upon signature. The purpose of this APA provision is to "give affected parties a reasonable time to adjust their behavior before the final rule takes effect." [1] However, when an agency grants or recognizes an exemption or relieves a restriction, affected parties do not need a reasonable time to adjust because the effect is not adverse. Thus, APA section 553(d)(1) allows for an effective date less than 30 days after publication for any rule that "grants or recognizes an exemption or relieves a restriction." [2] Here, the regulatory amendments to 40 CFR part 80 relieve a restriction by extending the 2024 RFS compliance reporting deadline (and by operation of law the associated attest engagement reporting deadline) ahead of the otherwise imminent deadline of March 31, 2025, thus providing obligated parties with additional time to demonstrate compliance with their 2024 renewable volume obligations (RVOs) under the RFS program.

Good cause to make a rule immediately effective also exists under APA section 553(d)(3). To make such a finding, an agency must "balance the necessity for immediate implementation against principles of fundamental fairness which require that all affected persons be afforded a reasonable amount of time to prepare for the effective date of its ruling." [3] Under this standard, EPA has determined that there is good cause to make the regulatory amendments to 40 CFR part 80 in this action operational upon signature so that obligated parties do not have to comply with their 2024 RVOs before modifications to the 2024 cellulosic biofuel standard become final. Otherwise, there would be confusion among obligated parties regarding their compliance obligations if the deadline took effect before the revised 2024 cellulosic biofuel standard was finalized.

### Does this action apply to me?

Entities potentially affected by this action are those involved with the production, distribution, and sale of transportation fuels (e.g., gasoline and diesel fuel) and renewable fuels (e.g., ethanol, biodiesel, renewable diesel, and biogas). Potentially affected categories include:

| Category | NAICS[a] code | Examples of potentially affected entities |
|---|---|---|
| Industry | 211130 | Natural gas liquids extraction and fractionation. |
| Industry | 221210 | Natural gas production and distribution. |
| Industry | 324110 | Petroleum refineries (including importers). |
| Industry | 325120 | Biogases, industrial (i.e., compressed, liquified, solid), manufacturing. |
| Industry | 325193 | Ethyl alcohol manufacturing. |
| Industry | 325199 | Other basic organic chemical manufacturing. |

---

[1] *Omnipoint Corp. v. Fed. Commc'n Comm'n,* 78 F.3d 620, 630 (D.C. Cir. 1996); see also *United States v. Gavrilovic,* 551 F.2d 1099, 1104 (8th Cir. 1977) (quoting legislative history).

[2] See 5 U.S.C. 553(d)(1).

[3] *Gavrilovic,* 551 F.2d at 1105.

| Category | NAICS<sup>a</sup> code | Examples of potentially affected entities |
|---|---|---|
| Industry | 424690 | Chemical and allied products merchant wholesalers. |
| Industry | 424710 | Petroleum bulk stations and terminals. |
| Industry | 424720 | Petroleum and petroleum products wholesalers. |
| Industry | 457210 | Fuel dealers. |
| Industry | 562212 | Landfills. |

<sup>a</sup> North American Industry Classification System (NAICS).

This table is not intended to be exhaustive, but rather provides a guide for readers regarding entities potentially affected by this action. This table lists the types of entities that EPA is now aware could potentially be affected by this action. Other types of entities not listed in the table could also be affected. To determine whether your entity would be affected by this action, you should carefully examine the applicability criteria in 40 CFR part 80. If you have any questions regarding the applicability of this action to a particular entity, consult the person listed in the **FOR FURTHER INFORMATION CONTACT** section.

## Preamble Acronyms and Abbreviations

Throughout this document the use of "we," "us," or "our" is intended to refer to EPA. We use multiple acronyms and terms in this preamble. While this list may not be exhaustive, to ease the reading of this preamble and for reference purposes, EPA defines the following terms and acronyms here:

CAA Clean Air Act
RFS Renewable Fuel Standard
RIN Renewable Identification Number
RVO Renewable Volume Obligation
SRE Small Refinery Exemption

## Outline of This Preamble

I. Background and Extension of 2024 RFS Compliance Reporting Deadline
II. Other RFS Amendments
　A. Annual Attest Engagement Deadline Consolidation
　B. Updated Standard Specification for Biodiesel
　C. Technical Corrections
III. Statutory and Executive Order Reviews
　A. Executive Order 12866: Regulatory Planning and Review
　B. Executive Order 14192: Unleashing Prosperity Through Deregulation
　C. Paperwork Reduction Act (PRA)
　D. Regulatory Flexibility Act (RFA)
　E. Unfunded Mandates Reform Act (UMRA)
　F. Executive Order 13132: Federalism
　G. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments
　H. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks
　I. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use
　J. National Technology Transfer and Advancement Act (NTTAA) and 1 CFR Part 51
　K. Congressional Review Act (CRA)
IV. Statutory Authority

## I. Background and Extension of 2024 RFS Compliance Reporting Deadline

On December 12, 2024, EPA proposed a rule to, among other things, partially waive the 2024 cellulosic biofuel volume requirement under the RFS program and revise the associated 2024 cellulosic biofuel percentage standard.[4] In this action, EPA is not finalizing the proposed partial waiver of the 2024 cellulosic biofuel requirement; EPA's decision on the proposed partial waiver and EPA's response to comments on that topic may be part of a later action. EPA also proposed several additional amendments to other RFS provisions, a majority of which are not being finalized here, but may instead be addressed in a later action.

In addition to the foregoing, EPA also proposed to extend the 2024 RFS compliance reporting deadline from March 31, 2025, to the next quarterly compliance reporting deadline after the effective date of the action finalizing the revised 2024 cellulosic biofuel standard. This action finalizes the extension of the 2024 RFS compliance reporting deadline as proposed for the reasons described below.

While the original 2024 RFS compliance reporting deadline of March 31, 2025, is still several weeks away, we expect that the effective date of the revised 2024 cellulosic biofuel standard will not occur until after this deadline. Therefore, in order to provide obligated parties with sufficient time to carry out and adjust their compliance strategies once we finalize the revised 2024 cellulosic biofuel standard, we are extending the 2024 RFS compliance reporting deadline from March 31, 2025, to the next quarterly compliance reporting deadline after the effective date of the final rule establishing the revised 2024 cellulosic biofuel standard.[5] By operation of law, the 2024 attest engagement deadline would also be extended to the next June 1 annual attest engagement reporting deadline after the revised 2024 RFS compliance reporting deadline.[6]

To illustrate the potential timing of these deadlines, if the final rule establishing the revised 2024 cellulosic biofuel standard is published in the **Federal Register** on May 15, 2025, then the effective date of the action would typically be 60 days later on July 14, 2025, and the 2024 RFS compliance reporting deadline would be September 1, 2025, because that would be the next quarterly reporting deadline after the effective date of the revised 2024 cellulosic biofuel standard. The 2024 attest engagement reporting deadline would then be June 1, 2026, because that would the next June 1 annual attest engagement reporting deadline after the revised 2024 RFS compliance reporting deadline.

This approach will provide regulatory certainty for obligated parties by providing them with sufficient time to carry out and adjust their compliance strategies once we finalize the revised 2024 cellulosic biofuel standard, thereby preventing unnecessary burden on obligated parties to prepare, submit, and then possibly retract and revise their 2024 RFS compliance reports. This approach is consistent with EPA's prior rules extending RFS compliance reporting deadlines in different factual circumstances [7] and with D.C. Circuit's case law.[8]

Commenters expressed mixed opinions on the proposed extension of the 2024 RFS compliance reporting deadline. A number of commenters supported the extension, stating that it would provide obligated parties with certainty regarding their RIN obligations and sufficient time to comply with the

---

[4] 89 FR 100442.

[5] The quarterly reporting deadlines are March 31, June 1, September 1, and December 1. 40 CFR 80.1451(f)(2).

[6] 40 CFR 80.1464(d)(1)(i).

[7] 86 FR 17073 (April 1, 2021); 87 FR 5696 (February 2, 2022).

[8] *Wynnewood Refining Co., LLC, et al.* v. *EPA,* 77 F.4th 767, 779 (D.C. Cir. 2023) ("Thus, rather than task EPA with overseeing a fixed compliance schedule, the Act gives EPA flexibility to craft and adjust a compliance regime in service of the Act's core mandate: to ensure the Act's annual renewable fuel volumes are met."). See also *ACE,* 864 F.3d at 718–21; *Monroe Energy, LLC* v. *EPA,* 750 F.3d 909, 919–20 (D.C. Cir. 2014); *Nat'l Petrochemical & Refiners Ass'n* v. *EPA,* 630 F.3d 145, 154–58) (D.C. Cir. 2010).

revised 2024 cellulosic biofuel standard. These commenters also stated that this extension would avoid confusion regarding when RINs need to be retired and avoid duplicative compliance reporting. Finally, these commenters also requested that EPA finalize the compliance date extension as quickly as possible in a final rule separate from the proposed partial waiver of the 2024 cellulosic biofuel volume requirement. We thank these commenters for their support and are finalizing the proposed extension in a separate action ahead of the previous 2024 RFS compliance reporting deadline of March 31, 2025, as suggested by the commenters.

One of these commenters also suggested that EPA should extend the RFS compliance reporting deadline for 2024 specifically to occur either by the next quarterly reporting deadline after the revised 2024 cellulosic biofuel standard becomes effective or after the attest engagement reporting deadline for the prior year (*i.e.,* 2023), whichever is later. The commenter also suggested regulatory language to make this change. The commenter stated that this approach is needed to ensure that an obligated party does not unintentionally carry forward a compliance deficit for two consecutive years (*i.e.,* for 2022 and 2023). However, because the attest engagement reporting deadline for 2023 has already passed (June 1, 2024) and all obligated parties should already have completed their attest engagements, it is unclear to EPA why such regulatory language would be necessary for the 2024 compliance year or what it would accomplish in practice. Therefore, we are not adopting this approach in this action.

Other commenters stated that they did not necessarily oppose the proposed extension to provide obligated parties more time to ensure compliance, but only in the scenario where obligated parties are complying with the existing 2024 cellulosic biofuel volume requirement (*i.e.,* a scenario where EPA does not waive the existing 1.09 billion RIN cellulosic biofuel volume requirement for 2024). These commenters also stated that such an extension would allow EPA to get a full picture of cellulosic RIN availability for 2024, project any policy changes as a result of case law surrounding small refinery exemption (SRE) petitions, and give the incoming administration an opportunity to review the basis of the proposed partial waiver. We are not taking final action on the proposed partial waiver of the 2024 cellulosic biofuel volume requirement in this action and thus are not opining on whether obligated parties will have to comply with the existing 2024 cellulosic biofuel standard.

Several commenters stated that an extension of the 2024 RFS compliance reporting deadline is unnecessary, but most provided no justification for their opposition other than stating that it was unnecessary. We disagree that the extension is unnecessary for the reasons described above.

One of these commenters suggested that obligated parties should be required to comply with the other RFS standards (*i.e.,* biomass-based diesel, advanced biofuel, and total renewable fuel) and then demonstrate compliance with just the cellulosic biofuel standard at a later date. The commenter suggested that such an approach could mimic the alternative RIN retirement schedule developed by EPA for small refineries to comply with their 2020 RVOs. We disagree that such an approach is appropriate or feasible for several reasons. First, given the nested nature of the RFS standards, it is not possible for obligated parties to comply with just their advanced biofuel and total renewable fuel obligations, as the cellulosic biofuel standard is nested within those standards. Such an approach would essentially require obligated parties to over-comply with their advanced biofuel and total renewable fuel obligations by retiring extra D4, D5, or D6 RINs that would otherwise be satisfied by the D3 RINs they retire to comply with their cellulosic biofuel obligations. Second, the small refinery alternative RIN retirement schedule was an optional program developed by EPA to address a very unique set of compliance challenges faced by small refineries at that specific time.[9] Those challenges do not exist in this instance and such an approach would be unnecessarily difficult and cumbersome to implement when a simple extension of the 2024 RFS compliance reporting deadline would accomplish the same desired outcome by providing all obligated parties with additional time to comply with their 2024 RVOs and avoiding duplicative compliance reporting.

This commenter also stated that delaying the RFS compliance reporting deadline could result in obligated parties using exporter RVOs and remedial actions to reduce RIN supply, or obligated party abuse of EPA's waiver authority, SRE petitions, and existing RFS compliance flexibilities. However, it is unclear to EPA how a delay of the 2024 RFS compliance reporting deadline could result in any of the outcomes suggested by the commenter.

---

[9] 87 FR 54160–61 (September 2, 2022).

A delay of the 2024 RFS compliance reporting deadline will not impact renewable fuel production for the year in question, nor will it allow for additional renewable fuel to be exported retroactively; it will only delay when RINs generated for the year in question need to be retired by obligated parties. Independent of the RFS annual compliance reporting deadline regulations for obligated parties in 40 CFR 80.1451(f)(1)(i), exporters of renewable fuel are required to satisfy exporter RVOs within 30 days of exporting the renewable fuel under 40 CFR 80.1430(f). In other words, retirement of RINs for exporter RVOs are not tied to the 2024 RFS compliance reporting deadline.[10] Obligated parties will need to retire the same number of RINs for 2024 compliance regardless of the date EPA sets for the RFS compliance reporting deadline. These comments are speculative and provide no basis for the assertions made.

Finally, one commenter proposed a completely different construct for the proposed extension of the 2024 RFS compliance reporting deadline, suggesting that EPA should extend the deadline to 12–16 months after EPA issues the decision for the last pending SRE petition under CAA section 211(o)(9) for 2023 and 2024, and not connect it, as proposed, to the date EPA takes final action on the proposed partial waiver of the 2024 cellulosic biofuel requirement. This commenter also stated that such an extension should apply to all obligated parties, not just small refineries, and asserted that because the proposed rule did not resolve certain unique issues regarding outstanding SRE petitions (*i.e.,* small refineries knowing the decisions regarding their pending petitions and having sufficient time to develop a compliance strategy in the case of a denied petition), EPA did not fully consider the economic impact of the proposed extension on small entities under the Regulatory Flexibility Act.

These comments are beyond the scope of this action. EPA's decisions on pending SRE petitions are not relevant to the proposed extension the 2024 RFS compliance reporting deadline, which was based on EPA's proposed partial waiver of the 2024 cellulosic biofuel requirement. If EPA's actions on those pending SRE petitions have their own effect on the 2024 or other year's RFS

---

[10] Note that exporters of renewable fuel must still submit annual compliance reports in accordance with the annual compliance reporting deadlines at 40 CFR 80.1451. While these reports summarize the exporter's annual exporting activity, the reports do not affect the timing of RIN retirements associated with exported renewable fuel.

compliance reporting deadlines, EPA will address that effect in any actions taken pursuant to CAA section 211(o)(9), not in this action. Moreover, even if this comment were not beyond the scope of the action, this commenter's suggested approach is unworkable given the language of CAA section 211(o)(9)(B)(i) that allows qualifying small refineries to petition for exemptions from their RFS compliance obligations ''at any time,'' meaning the date that the last pending SRE petition for 2023 and 2024 are resolved, including the inevitable court challenges, may be years in the future.

The bottom line is that, absent this EPA action to extend the 2024 RFS compliance reporting deadline, all obligated parties—including small refineries—would be required to comply with their 2024 RVOs by March 31, 2025, regardless of any pending SRE petitions. Thus, the extension of the 2024 RFS compliance reporting deadline finalized in this action will provide all obligated parties—including small refineries—with more time to develop their compliance strategies than they would otherwise be afforded.

## II. Other RFS Amendments

In addition to extending the 2024 RFS compliance reporting deadline, we are also making several revisions to the RFS program, as further discussed in this section.

### A. Annual Attest Engagement Deadline Consolidation

We are consolidating and simplifying the existing provisions for the RFS program's annual attest engagement deadline. Specifically, we are specifying that the deadline is always the next June 1 annual attest engagement reporting deadline after the annual compliance reporting deadline. The previous language at 40 CFR 80.1464(d)(1) contained redundant and year-specific attest engagement deadline language that, taken together, resulted in the same June 1 deadline for any given compliance year, making the previous regulatory structure unnecessarily complicated. The simplified attest engagement deadline language does not change the deadline for any compliance year and makes it easier for obligated parties to understand when their annual attest engagement reports are due by removing redundant and sunsetted text from the RFS regulations. We received one comment in support of consolidating and simplifying the existing provisions for the annual attest engagement deadline and no adverse comments. As such, we are finalizing the provisions as proposed.

### B. Updated Standard Specification for Biodiesel

We are updating the reference in 40 CFR part 80 to ASTM D6751–20a—which is used in the definition of biodiesel in 40 CFR 80.2—to reference the most recent industry standard of ASTM D6751–24. ASTM D6751 is used to define the quality of biodiesel that may participate in the RFS program, and we periodically update industry standards codified in our regulations to be consistent with changes to these standards over time. However, after EPA last updated the reference to ASTM D6751 in 40 CFR part 80,[11] industry has updated ASTM D6751 in a way that has resulted in inconsistency of quality standards between the version that was specified in the RFS regulations (ASTM D6751–20a) and the most recent version (ASTM D6751–24), which many states use. To address potential confusion on the part of stakeholders with regards to acceptable biodiesel quality under the RFS program, we are updating the regulations to reference the most recent version of ASTM D6751. We received several comments that all supported updating the reference to ASTM D6751–24 and are therefore finalizing this update as proposed.

### C. Technical Corrections

We are making several technical amendments to 40 CFR part 80. These amendments are being made to correct minor inaccuracies and clarify the current regulations. These changes are described in table II.C–1. We received one comment in support of these revisions and are therefore finalizing these technical corrections and clarifications as proposed.

TABLE II.C–1—MISCELLANEOUS TECHNICAL CORRECTIONS AND CLARIFICATIONS

| Part and section of title 40 | Description of revision |
|---|---|
| § 80.2 | Correcting a typo in the definition of ''Glycerin''. |
| § 80.2 | Replacing a cross-reference to a deleted provision in the definition of ''Locomotive engine''. |
| §§ 80.105(j)(3) and 80.110(j)(3) | Clarifying that batch numbers are numbered based on the compliance year of the batch, rather than the calendar year. |
| § 80.1440(f)(1) | Removing cross-references to deleted provisions. |

## III. Statutory and Executive Order Reviews

Additional information about these statutes and Executive orders can be found at https://www.epa.gov/laws-regulations/laws-and-executive-orders.

### A. Executive Order 12866: Regulatory Planning and Review

This action is not a significant regulatory action as defined in Executive Order 12866 and was therefore not subject to a requirement for Executive Order 12866 review.

### B. Executive Order 14192: Unleashing Prosperity Through Deregulation

This action alleviates regulatory burden as described in Executive Order 14192.

### C. Paperwork Reduction Act (PRA)

This action does not impose an information collection burden under the PRA. OMB has previously approved the information collection activities related to this proposed rule and has assigned the following OMB control numbers 2060–0725, 2060–0740, and 2060–0749. This action extends the 2024 RFS compliance reporting deadline and would not impose new or different reporting requirements on regulated parties than already exist for the RFS program.

### D. Regulatory Flexibility Act (RFA)

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA. In making this determination, EPA concludes that the impact of concern for this rule is any significant adverse economic impact on small entities and that the agency is certifying that this rule will not have a significant economic impact on a substantial number of small entities

---

[11] 88 FR 44468 (July 12, 2023).

because the rule relieves regulatory burden on the small entities subject to the rule.

This action extends the 2024 RFS compliance reporting deadline and makes minor corrections and modifications to the RFS regulations. As such, we do not anticipate that there will be any significant adverse economic impact on directly regulated small entities as a result of these revisions.

The small entities directly regulated by the RFS program are small refiners, which are defined at 13 CFR 121.201. This action would decrease burden via an extension of the 2024 RFS compliance reporting deadline. We have therefore concluded that this action will relieve regulatory burden for all directly regulated small entities.

*E. Unfunded Mandates Reform Act (UMRA)*

This action does not contain an unfunded mandate as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. This action imposes no enforceable duty on any state, local, or Tribal governments. Requirements for the private sector do not exceed $100 million in any one year.

*F. Executive Order 13132: Federalism*

This action does not have federalism implications. It will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government.

*G. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments*

This action does not have Tribal implications as specified in Executive Order 13175. This action will be implemented at the Federal level and affects transportation fuel refiners, blenders, marketers, distributors, importers, exporters, and renewable fuel producers and importers. Tribal governments would be affected only to the extent they produce, purchase, and use regulated fuels. Thus, Executive Order 13175 does not apply to this action.

*H. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks*

EPA interprets Executive Order 13045 as applying only to those regulatory actions that concern environmental health or safety risks that EPA has reason to believe may disproportionately affect children, per the definition of "covered regulatory action" in section 2–202 of the Executive order. Therefore, this action is not subject to Executive Order 13045 because it extends the 2024 RFS compliance reporting deadline and does not concern an environmental health risk or safety risk. Since this action does not concern human health, EPA's Policy on Children's Health also does not apply.

*I. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use*

This action is not subject to Executive Order 13211, because it is not a significant regulatory action under Executive Order 12866.

*J. National Technology Transfer and Advancement Act (NTTAA) and 1 CFR Part 51*

This action involves technical standards. In accordance with the requirements of 1 CFR 51.5, we are incorporating by reference the following standard from ASTM International (ASTM):

TABLE III.J–1—STANDARD TO BE INCORPORATED BY REFERENCE

| Standard | Part and section of title 40 | Summary |
|---|---|---|
| ASTM D6751–24, Standard Specification for Biodiesel Fuel Blendstock (B100) for Middle Distillate Fuels, approved March 1, 2024. | §§ 80.2 and 80.12 | This updated standard describes the characteristics of biodiesel. |

A detailed discussion of this standard can be found in section II.B. Copies of this standard may be obtained from ASTM International, 100 Barr Harbor Dr., P.O. Box C700, West Conshohocken, PA 19428–2959, by calling (877) 909–ASTM, or at *https://www.astm.org.*

*K. Congressional Review Act (CRA)*

This action is subject to the CRA, and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a "major rule" as defined by 5 U.S.C. 804(2).

**IV. Statutory Authority**

Statutory authority for this action comes from sections 114, 203–05, 208, 211, and 301 of the CAA, 42 U.S.C. 7414, 7522–24, 7542, 7545, and 7601.

**List of Subjects in 40 CFR Part 80**

Environmental protection, Administrative practice and procedure, Air pollution control, Diesel fuel, Fuel additives, Gasoline, Imports, Incorporation by reference, Oil imports, Petroleum, Renewable fuel.

**Lee Zeldin,**
*Administrator.*

For the reasons set forth in the preamble, EPA amends 40 CFR part 80 as follows:

**PART 80—REGULATION OF FUELS AND FUEL ADDITIVES**

■ 1. The authority citation for part 80 continues to read as follows:

**Authority:** 42 U.S.C. 7414, 7521, 7542, 7545, and 7601(a).

**Subpart A—General Provisions**

■ 2. Amend § 80.2 by revising the definitions "Glycerin" and "Locomotive engine" to read as follows:

**§ 80.2 Definitions.**

\* \* \* \* \*

*Glycerin* means a co-product from the production of biodiesel that primarily contains glycerol.

\* \* \* \* \*

*Locomotive engine* means an engine used in a locomotive as defined under 40 CFR 1033.901.

\* \* \* \* \*

■ 3. Amend § 80.12 by revising paragraphs (b)(1) and (c)(12) to read as follows:

**§ 80.12 Incorporation by reference.**

\* \* \* \* \*

(b) * * *

(1) SM 2540, Solids, revised June 10, 2020; IBR approved for § 80.155(c).

\* \* \* \* \*

(c) * * *

(12) ASTM D6751–24, Standard Specification for Biodiesel Fuel Blendstock (B100) for Middle Distillate

Fuels, approved March 1, 2024 ("ASTM D6751"); IBR approved for § 80.2.

\* \* \* \* \*

**Subpart E—Biogas-Derived Renewable Fuel**

■ 4. Amend § 80.105 by revising paragraph (j)(3) to read as follows:

### § 80.105 Biogas producers.

\* \* \* \* \*

(j) * * *

(3) The biogas producer must assign a number (the "batch number") to each batch of biogas consisting of their EPA-issued company registration number, the EPA-issued facility registration number, the last two digits of the compliance year in which the batch was produced, and a unique number for the batch, beginning with the number one for the first batch produced each compliance year and each subsequent batch during the compliance year being assigned the next sequential number (*e.g.,* 4321–54321–23–000001, 4321–54321–23–000002, etc.).

\* \* \* \* \*

■ 5. Amend § 80.110 by revising paragraph (j)(3) to read as follows:

### § 80.110 RNG producers, RNG importers, and biogas closed distribution system RIN generators.

\* \* \* \* \*

(j) * * *

(3) The RNG producer, RNG importer, or biogas closed distribution system RIN generator must assign a number (the "batch number") to each batch of RNG or biogas-derived renewable fuel consisting of their EPA-issued company registration number, the EPA-issued facility registration number, the last two digits of the compliance year in which the batch was produced, and a unique number for the batch, beginning with the number one for the first batch produced each compliance year and each subsequent batch during the compliance year being assigned the next sequential number (*e.g.,* 4321–54321–23–000001, 4321–54321–23–000002, etc.).

\* \* \* \* \*

**Subpart M—Renewable Fuel Standard**

■ 6. Amend § 80.1440 by revising paragraph (f)(1) to read as follows:

### § 80.1440 What are the provisions for blenders who handle and blend less than 250,000 gallons of renewable fuel per year or who handle renewable fuel blended for fuels under a national security exemption?

\* \* \* \* \*

(f) * * *

(1) Tactical military vehicles, engines, or equipment having an EPA national security exemption from emission standards under 40 CFR 85.1708, 1042.635, or 1068.225.

\* \* \* \* \*

■ 7. Amend § 80.1451 by adding paragraph (f)(1)(i)(B)(*5*) to read as follows:

### § 80.1451 What are the reporting requirements under the RFS program?

\* \* \* \* \*

(f) * * *

(1) * * *

(i) * * *

(B) * * *

(*5*) For the 2024 compliance year, annual compliance reports must be submitted by the next quarterly reporting deadline under paragraph (f)(2) of this section after the date the revised 2024 cellulosic biofuel standard becomes effective in § 80.1405(a).

\* \* \* \* \*

■ 8. Amend § 80.1464 by revising paragraph (d)(1) to read as follows:

### § 80.1464 What are the attest engagement requirements under the RFS program?

\* \* \* \* \*

(d) * * *

(1) *Obligated parties.* Obligated parties must submit annual attest engagement reports to EPA by the next June 1 annual attest engagement reporting deadline after the annual compliance reporting deadline under § 80.1451(f)(1)(i).

\* \* \* \* \*

[FR Doc. 2025–03976 Filed 3–13–25; 8:45 am]

**BILLING CODE 6560–50–P**

# Exhibit B

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN REFINING GROUP, INC.; CALUMET MONTANA REFINING, LLC; CALUMET SHREVEPORT REFINING, LLC; ERGON REFINING, INC.; ERGON-WEST VIRGINIA, INC.; HUNT REFINING COMPANY; PAR MONTANA, LLC; PLACID REFINING COMPANY LLC; SAN JOAQUIN REFINING CO., INC.; THE SAN ANTONIO REFINERY LLC; U.S. OIL & REFINING COMPANY; AND WYOMING REFINING COMPANY,

    Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

    Respondent.

Case No. _____

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioners American Refining Group, Inc.; Calumet Montana Refining, LLC; Calumet Shreveport Refining, LLC; Ergon Refining, Inc.; Ergon-West Virginia, Inc.; Hunt Refining Company; Par Montana, LLC; Placid Refining Company LLC; San Joaquin Refining Co., Inc.; The San Antonio Refinery LLC; U.S. Oil & Refining Company; and

Wyoming Refining Company (together, the "Small Refineries Coalition"), provide the following corporate disclosure statement:

**American Refining Group, Inc.** is incorporated under the laws of Pennsylvania. American Refining Group, Inc. is a refiner of petroleum products. American Refining Group, Inc. has no parent company, and no publicly held company has a 10% or greater ownership interest in it.

**Calumet Montana Refining, LLC** is incorporated under the laws of Delaware. Calumet Montana Refining, LLC is owned 100% by Calumet, Inc., a manufacturer of specialty products and a publicly traded company under the symbol "CLMT." There are no other known parent corporations or publicly held corporations that own 10% or more of Calumet Inc.'s stock.

**Calumet Shreveport Refining, LLC** is incorporated under the laws of Delaware. Calumet Shreveport Refining, LLC is owned 100% by Calumet, Inc., a manufacturer of specialty products and a publicly traded company under the symbol "CLMT." There are no other known parent corporations or publicly held corporations that own 10% or more of Calumet Inc.'s stock.

**Ergon Refining, Inc.** is incorporated under the laws of Mississippi. Ergon Refining, Inc. is a refiner of petroleum products.

Ergon Refining, Inc. is wholly owned by parent company Ergon, Inc., and no publicly held company has a 10% or greater ownership interest in it.

**Ergon-West Virginia, Inc.** is incorporated under the laws of Mississippi. Ergon-West Virginia, Inc. is a refiner of petroleum products. Ergon-West Virginia, Inc. is wholly owned by parent company Ergon, Inc., and no publicly held company has a 10% or greater ownership interest in it.

**Hunt Refining Company** is incorporated under the laws of Delaware. Hunt Refining Company is a refiner of petroleum products. Hunt Refining Company is an indirect wholly owned subsidiary of Hunt Consolidated, Inc., and no publicly held company has a 10% or greater ownership interest in it.

**Par Montana, LLC** is a limited liability company organized under the laws of Delaware. Par Montana, LLC, is a refiner of petroleum products. Par Montana, LLC, is an indirect wholly owned subsidiary of Par Pacific Holdings, Inc., a publicly traded corporation. BlackRock, Inc., pursuant to its recent 13F filing, reported that it or funds or accounts managed by it, owns more than 10% of Par Pacific Holding's stock; no other publicly held company has a 10% or greater ownership interest in it.

**Placid Refining Company LLC** is a limited liability company organized under the laws of Delaware. Placid Refining Company LLC is a refiner of petroleum products. Placid Refining Company LLC is owned

100% by its parent companies Placid Holding Company and RR Refining, Inc. and no publicly held company has a 10% or greater ownership interest in it.

**San Joaquin Refining Co., Inc.** is a privately held company located in Bakersfield, California. It is a refiner of petroleum products. San Joaquin Refining Co., Inc. has no parent company, is not publicly traded, and no publicly held company has a 10% or greater ownership interest in it.

**The San Antonio Refinery LLC** is a Delaware limited liability company (f/k/a Calumet San Antonio Refining, LLC). The San Antonio Refinery LLC is a refiner of petroleum products. The San Antonio Refinery LLC is owned 100 percent by Allegiance Refining, LLC. Allegiance Refining, LLC, is a Texas limited liability company. It is a refining operations company and operator of The San Antonio Refinery. Allegiance Refining, LLC, is not publicly traded, and no publicly held company has a ten percent or greater ownership interest in it.

**U.S. Oil & Refining Co.** is incorporated under the laws of Delaware. U.S. Oil & Refining Co. is a refiner of petroleum products. U.S. Oil & Refining Co. is an indirect wholly owned subsidiary of Par Pacific Holdings, Inc., a publicly held corporation. BlackRock, Inc., pursuant to its recent 13F filing, reported that it or funds or accounts managed by it, owns more than 10% of Par Pacific Holding's stock; no

other publicly held company has a 10% or greater ownership interest in it.

**Wyoming Refining Company** is a trade name for Hermes Consolidated, LLC, a limited liability company organized under the laws of Delaware, doing business as Wyoming Refining Company. Wyoming Refining Company is a refiner of petroleum products. Wyoming Refining Company is an indirect wholly owned subsidiary of Par Pacific Holdings, Inc., a publicly held corporation. BlackRock, Inc., pursuant to its recent 13F filing, reported that it or funds or accounts managed by it, owns more than 10% of Par Pacific Holding's stock; no other publicly held company has a 10% or greater ownership interest in it.

Petitioners will file a revised corporate disclosure statement should they become aware of a change in corporate ownership interests that would affect the disclosures required by Rule 26.1.

Dated: May 13, 2025

Respectfully submitted,

 *s/ Claudia O'Brien* 
Claudia O'Brien
664 Live Oak Drive
McLean, VA 22101
Telephone: (703) 220-2513
claudia.obrien87@gmail.com

*Attorney for Petitioners*

# CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 3(d), 15(c) and 25, D.C. Circuit Rules 15(a) and 25, and 40 C.F.R. § 23.12(a), I hereby certify that on March 13, 2025, I will cause copies of the foregoing Petition for Review and Corporate Disclosure Statement to be served by certified mail, return receipt requested upon the following:

HON. LEE ZELDIN, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

CORRESPONDENCE CONTROL UNIT
Office of General Counsel (2311)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

HON. PAMELA BONDI
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

HON. ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dated: May 13, 2025

                                         *s/ Claudia O'Brien*
                                         Claudia O'Brien